IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02068-MSK-BNB

STEVEN A. GALBRAITH,

    Plaintiff,

v.

CORRECTIONAL HEALTHCARE, INC.,
JOHN AND JANE DOE, unknown employees of Correctional Healthcare, Inc.
DEPUTY NIEMEYER,
RICHARD AND MARY ROE, unknown Deputy Sheriffs of El Paso County,
PETER POE, unknown Chief Administrator of the El Paso County Criminal Justice Center, and
TERRY MAKETA,

    Defendants.[1]
_____

**OPINION AND ORDER DENYING MOTIONS TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to Defendants Deputy Niemeyer, Richard and Mary Roe, Peter Poe, and Terry Maketa's (collectively, "the El Paso Defendants") Motion to Dismiss or in the alternative for Summary Judgment **(# 23)**, the Plaintiff's response **(#26)**, and the El Paso Defendants' reply **(# 33)**; Defendant Correctional Healthcare, Inc. ("Correctional")'s Motion to Dismiss **(# 31)**, the Plaintiff's response **(# 36)**, and Correctional's

---

[1] The Court has modified the caption of this action to differentiate between the various classes of unknown Defendants. *See Black's Law Dictionary*, 17th Ed. at 840-41 ("John Doe"). All future filings in this case shall use the above caption. In addition, both Deputy Niemeyer and Correctional Healthcare Inc. state that the Plaintiff has misspelled their names. Absent a motion to amend the caption, the Court will continue to use the names supplied by the Plaintiff.

1

reply **(# 42)**; and the Plaintiff's Motion for an Order to Have Documents Sent to Him **(# 35)**, to which no responsive papers have been filed.[2]

## FACTS

According to the Plaintiff's *pro se* Second Amended Complaint **(# 11)**, the Plaintiff was involved in a motorcycle accident on May 21, 2004, suffering various injuries. He was taken to a hospital and placed in an intensive care unit. At the same time, the Colorado Springs Police placed the Plaintiff under arrest for unstated criminal charges.

On May 25, 2005, the Plaintiff was released from the hospital and into the custody of Defendants Richard and Mary Roe, two unidentified Deputy El Paso County Sheriffs, for transportation to the El Paso County Justice Center. The Roe Defendants were informed by the Plaintiff's doctor that the Plaintiff would need a wheelchair because his injuries would make it difficult for him to walk. The Roe Defendants were further informed by the Plaintiff's doctor that the Plaintiff would be experiencing increasing pain due to medication wearing off, and were told that the Plaintiff would need to wear a neck brace for several weeks. The Plaintiff contends that the Roes delivered the Plaintiff directly to his housing unit, bypassing an Intake Unit. The effect, according to the Plaintiff, was that the Roe Defendants, along with the Doe Defendants, unidentified employees of Correctional, "did not allow [the Plaintiff] to have the required medical indoctrination to ascertain his immediate and future medical needs."

---

[2]The docket indicates that several additional motions remain pending. The Plaintiff's Motion for Order for Service of Summons and Complaint **(# 4)** was granted by Docket # 14. The Plaintiff's Motion of Leave to Proceed *In Forma Pauperis* **(# 5)** was granted by Docket # 6. The Plaintiff's Motion for Extension of Time to File a Reply **(# 34)** is denied as moot, in light of the Plaintiff since having filed his reply.

The Plaintiff began to feel pain as his medication wore off, and he made a request for medical treatment to Defendant Niemeyer and to anonymous Defendants,[3] but that request was refused. The Plaintiff further contends that Correction did not send any employees to his unit that evening to check on his condition. The Plaintiff states that Defendant Niemeyer continuously denied him treatment for the next two weeks. On June 20, 2004, the medical staff finally gave the Plaintiff pain medication.

The Plaintiff also contends that he was denied a request to sleep on an elevated bed, and that Defendant Niemeyer and, presumably, Defendants Roe, denied that request. By being denied an elevated bed, the Plaintiff was forced to climb up from his bed placement on the floor each time he needed to move, causing him to incur additional pain.

The Plaintiff next states that, upon his arrival at the El Paso County Jail, Defendant Correctional and, apparently, Defendant Jane Doe, refused to honor the Plaintiff's request for pain medication, allegedly falsely stating that no medication card for the Plaintiff was available. The Plaintiff contends that there was an existing prescription for him for pain medicine, but that Defendant Jane Doe stated that no such prescription existed. Defendant Jane Doe allegedly promised to look into the matter and return, but she did not do so, and she continued to ignore his subsequent requests for medication.

Finally, the Plaintiff alleges that Defendants Maketa and Poe are subject to liability for failing to properly train the employees of the El Paso County Jail in procedures for dealing with inmates transferred from hospitals and for providing adequate medical care to inmates.

---

[3]It is not clear whether the Second Amended Complaint's reference to "John & Jane Doe" in this context refers to the Doe Defendants or the Roe Defendants, hence the need for clarification among the various unnamed parties.

As to each Defendant, the Plaintiff appears to assert a claim for deliberate indifference to his medical needs under 42 U.S.C. § 1983.

The El Paso County Defendants filed the instant Motion to Dismiss, or, in the alternative, for Summary Judgment[4] **(# 23)**, arguing: (i) the claims against Defendants Maketa and Poe sound in *respondeat superior*, for which liability is not available under § 1983, and the Plaintiff does not allege an unconstitutional custom or policy; (ii) the Plaintiff failed to exhaust administrative remedies, in violation of 42 U.S.C. § 1997e(a); (iii) the Plaintiff fails to state a claim of deliberate indifference ; (iv) the El Paso County Defendants are entitled to qualified immunity; and (v) any potential state-law claims are barred by the Plaintiff's failure to comply with the Colorado Governmental Immunity Act ("CGIA"), C.R.S. § 24-10-101 *et seq.* .

The Plaintiff's response **(# 26)** addressed only the exhaustion issue. The Plaintiff apparently disputes the El Paso County Defendants' contention that the Plaintiff filed no grievances about his medical treatment, and he points to a note in his medical record that mentions the Plaintiff having filed a grievance about experiencing pain from a broken tail bone as a result of his accident. The Plaintiff does not, however, identify this or any other relevant grievance by date or number, or attach copies of the relevant grievances.

---

[4]The Court strongly discourages the filing of motions that seek relief under Fed. R. Civ. P.12(b) and Fed. R. Civ. P. 56 as alternatives. The analytical framework and standards applicable to motions under each rule differ substantially, as do the Court's formatting requirements for each type of motion. *See* MSK Practice Standard V.H.2, 3. (The Court notes that the El Paso County Defendants' motion does not comply with the format requirements for either type of motion.) By offering a vague hybrid analysis instead of engaging in a rigorous examination of which rule provides the appropriate analysis, counsel complicate and delay the decisional process.

Correctional also moves to dismiss **(# 31)** the claims against it,[5] arguing that: (i) it is not a state actor for purposes of § 1983; (ii) the Plaintiff fails to allege anything more than *respondeat superior* liability against Correctional; (iii) the Plaintiff failed to exhaust his administrative remedies; and (iv) the Plaintiff failed to comply with the CGIA.

The Plaintiff's response **(# 36)** to Correctional's motion is far more thorough, although in some respects, it is more responsive to the El Paso County Defendants' motion. In it, he argues: (i) that the El Paso County Defendants have erroneously stated that he did not file grievances sufficient to exhaust his administrative remedies on his claims, pointing specifically to inconsistencies in the El Paso County Defendants' identification of all of the grievances he has filed; (ii) that he states a claim under the Eighth Amendment; and (iii) that compliance with the CGIA was not necessary because the Defendants' actions were willful, and that, in any event, he did comply with the CGIA by filing a Notice of Claim. Correctional filed a reply **(# 42)** noting the Plaintiff's failure to respond to many of its arguments. In turn, the Plaintiff filed a sur-reply **(# 44)**, responding to Correctional's arguments: (i) that by acting under contract with El Paso County, Correctional became a state actor; and (ii) relying on his prior brief with regard to the remaining issues.

Finally, the Plaintiff has filed a motion **(# 35)** requesting that the Court forward copies of its case file in *Galbraith v. Correctional Health*, D.C. Colo. Case No. 04-cv-01412-ZLW, and that case file of the 10th Circuit appeal of that case, *Galbraith v. Correctional Health*, 10th Cir. Case No. 05-1060 to him.

---

[5]Correctional does not appear to move on behalf of its employees, the Doe Defendants.

## ANALYSIS

### A. Standard of review

In reviewing all of the motions, the Court is mindful of the Plaintiff's *pro se* status, and accordingly, the Court construes his pleadings and other filings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiff from the duty to comply with the various rules and procedures governing litigants and counsel, and in this regard, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

For reasons stated more fully below, the Court deems the El Paso County Defendants' motion, like Correctional's motion, to be a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

### B. Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), an inmate must fully exhaust available administrative remedies before commencing suit in federal court. The burden of showing exhaustion is on the Plaintiff, to be established by either attaching copies of documents showing complete exhaustion, or, in the absence of written documentation, by identifying with specificity the procedures invoked and their outcome. *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1209-10 (10th Cir. 2003). Exhaustion is a pleading requirement, and the failure to adequately allege it is grounds for dismissal of the complaint. *Id.* at 1210. The failure of an inmate to exhaust any claims in the complaint requires dismissal of the entire action. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189-92 (10th Cir. 2004).

The exhaustion requirement applies to all suits regarding prison life, whether they challenge general circumstances or particular episodes. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required even though the grievance procedure does not make available all of the remedies– such as monetary damages– the inmate desires. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The fact that an inmate might perceive the administrative procedure as futile is unavailing; futility is not an exception to the exhaustion requirement. *Id.* at n 6; *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir.2002). An inmate that begins the administrative procedure but does not complete it has not adequately exhausted it. *Jernigan*, 304 F.3d at 1032. An inmate's grievances do not have to specifically articulate legal theories, but must be sufficiently specific as to the nature of the grievance to give prison officials notice of the type of problem of which the inmate complains. *See Johnson v. Johnson*, 385 F.3d 503, 517-18 and n. 9 (5th Cir. 2004), *citing Porter*, 534 U.S. at 525 (one purpose of exhaustion requirement is to create

an "administrative record that clarifies the contours of the controversy"); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). Similarly, although the grievance does not have to identify involved individuals with precision, particularly where the inmate complains of systemic problems, but where discrete acts are involved, the inmate may be required to identify, by name or function, the responsible individual(s). *Johnson*, 385 F.3d at 522-23.

Because exhaustion is a pleading requirement, the Court turns to the Plaintiff's Second Amended Complaint. That document contains a section entitled "Exhaustion" which reads as follows:

> Plaintiff has exhausted all available administrative remedies regarding the matters described in this complaint. On the 26th day of June 2004, he filed a Grievance asking for adequate medical treatment at C.J.C. This Grievance was denied on the 18th day of July 2004. Plaintiff then filed an appeal on the 21st day of July 2004, who denied it on the 16th day of August 2004. Copies of these Grievances and appeals were attached to a prior Complaint, Docket No. 04-Z-1412; filed in the United States Tenth Circuit District Court of Colorado.

*Docket* # 11 at ¶ 42. The Court finds this assertion to be sufficiently specific as to the procedures invoked by the Plaintiff and their outcome to satisfy the requirements of *Steele* at this stage of the litigation. At the pleading stage, the Court must treat all of the allegations in the Second Amended Complaint as true. Although the El Paso County Defendants contend that the Plaintiff did not file any grievances in June 2004, this contradiction of his allegation cannot be adjudicated in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6),[6] and thus, the Defendants'

---

[6]The Court declines to treat the El Paso County Defendants' motion as one for summary judgment for several reasons. First, the motion does not comply with the Court's formatting standards for summary judgment motions. Second, by converting the motion from one under Rule 12 to one under Rule 56, the Court would have to give notice to the Plaintiff and permit him an additional opportunity to submit evidence. *See* Fed. R. Civ. P. 12(b). Doing so would merely

motions to dismiss on exhaustion grounds are denied. The Court advises the Plaintiff, however, that should the Defendants move for summary judgment on the exhaustion issue, he will bear the burden of coming forward with evidence to support his contention that he did indeed fully exhaust all of his claims in this action.

### C. Sufficiency of pleadings

The Defendants raise several arguments as to the Plaintiff's pleadings: (i) that the claims against Defendants Correctional, Maketa, and Poe fail to allege personal participation; and (ii) that the Plaintiff fails to allege facts establishing that Correction is a state actor; and (iii) that the Plaintiff fails to state a claim.

Turning first to the personal participation issue, 42 U.S.C. § 1983 requires a plaintiff to allege that each defendant personally participated in the deprivation of his constitutional rights. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir.1996). The mere fact that a particular defendant has supervisory authority over an individual who commits a constitutional violation is insufficient to create liability in the supervisor. *Id.* However, there are circumstances where a supervisor who does not personally participate in the constitutional deprivation can nevertheless be liable. Where the supervisor creates or perpetuates a custom or policy that led directly to the plaintiff's injury, the supervisor may be held liable. *Monell v. New York City Dept. of Social*

---

delay adjudication of the remaining issues presented here. Third, even if the Court were inclined to convert the motion to one for summary judgment, an indispensable piece of evidence is missing from the record: although the El Paso County Defendants claim to have a grievance procedure governing inmates, and assert that its procedures are "in strict compliance with the Federal Standards for Inmate Grievance Procedures, American Correctional Association Standards, and are common to jails throughout the country," they have not attached a copy of the procedures, nor described precisely how the procedures operate. Without this evidence, the Court cannot consider whether there is a genuine dispute of fact on the issue of exhaustion for purposes of Fed. R. Civ. P. 56.

*Servs.*, 436 U.S. 658, 694 (1978). For example, where a supervisor's training program or supervisory policies are so inadequate that it amounts to deliberate indifference to the risk that under-trained or improperly-supervised employees might violate inmates' constitutional rights, the supervisor can be held liable. *Board of County Commissioners v. Brown*, 520 U.S. 397, 406-07 (1997), *citing Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) ("plaintiff must show that an affirmative link exists between the constitutional deprivation and either the defendant's personal participation, his exercise of control or direction, or his failure to supervise").

Here, a broad reading of the Second Amended Complaint indicates that the Plaintiff has alleged that Defendants Maketa, Poe, and Correctional engaged in "polic[ies], practice[s], and procedures" that resulted in "an obvious failure to train . . . employees on the implementation of the . . . constitutional application of adequate medical care." *Docket # 11 at ¶ 36*. Another paragraph in the Second Amended Complaint arguably asserts a custom or policy of inadequate employee hiring or supervision. *Id.* at ¶ 39. Whether the Plaintiff is ultimately able to prove that these Defendants' training or supervisory policies arise to a constitutionally deficient level is a matter to be resolved in the future, either upon summary judgment or at trial. At this stage of the proceedings, the Court finds that the Plaintiff has adequately alleged *Monell* claims against Defendants Maketa, Poe, and Correctional.

Next, Correctional challenges the sufficiency of the Plaintiff's allegation that it is a state actor. The Plaintiff argues that, as an entity contracting with El Paso County to provide medical services to prisoners, Correctional becomes a state actor. This assertion is clearly correct. *See West v. Atkins*, 487 U.S. 42, 53-54 (1988), *citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

10

However, the Second Amended Complaint does not actually allege that Correctional supplies medical services to inmates pursuant to a contract with El Paso County. *See Docket* # 11 at ¶ 2. Because this is a pleading defect easily cured by amendment, the Court denies Correctional's motion to dismiss on this ground, and deems numbered paragraph 2 of the Second Amended Complaint to add an allegation that Correction contracts with El Paso County to provide medical services to prisoners.

Finally, all Defendants contend that the Plaintiff fails to state a claim for deliberate indifference to medical needs under the Eighth Amendment. To establish an Eighth Amendment claim arising from the failure to provide medical care, an inmate must show that (1) his medical needs were serious, and (2) prison officials were deliberately indifferent to those needs. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir.1996). A medical need is serious if it has been diagnosed by a physician as requiring treatment or is so obvious that a layperson could recognize the need for a doctor's attention. *Riddle*, 83 F.3d at 1202. To show "deliberate indifference" to his needs, the Plaintiff must demonstrate an official's awareness of a substantial risk of serious harm that is ignored. *Farmer,* 511 U.S. at 835; *Garrett*, 254 F.3d at 949 (defendant must be aware of facts giving rise to an inference of substantial risk of harm and must actually draw that inference). The substantial harm requirement may be satisfied by a showing of lifelong handicap, permanent loss, or considerable pain. *Garrett*, 254 F.3d at 950.

Taking the Second Amended Complaint in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has adequately alleged an Eighth Amendment violation against all of the Defendants. The Roe Defendants were expressly informed by the Plaintiff's doctor that the

Plaintiff's pain medication would be wearing off. *Docket # 11, ¶ 11*. The Plaintiff may ultimately be able to prove that the Roe Defendants actually inferred from this instruction that the Plaintiff would need additional pain medication in the near future, lest he suffer "substantial harm" in the form of additional pain, and that they refused to provide him with that medication. The Plaintiff alleges that the Doe Defendants and Defendant Niemeyer were also informed of his medical needs, and refused to provide him with his medication. *See e.g. Docket # 11, ¶ 17*. As discussed previously, the Plaintiff has stated an adequate *Monell* claim against Defendants Correctional, Poe, and Maketa. Thus, the Defendants' motions to dismiss are denied.

### D. Qualified immunity

The El Paso County Defendants argue that they are entitled to qualified immunity. Government officials who perform discretionary government functions are entitled to qualified immunity from civil damages, provided their conduct does not violate clearly established rights of which a reasonable government official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Siegert v. Gilley*, 500 U.S. 226, 231-233 (1991), the Supreme Court enunciated the appropriate framework for determining whether qualified immunity is applicable. Under *Siegert*, a court must first determine whether the plaintiff "has asserted a violation of a constitutional right." *Siegert*, 500 U.S. at 232. If so, then a court must determine whether the right was clearly enough established that reasonable officials in the defendants' position would have understood that their conduct violated such right. *Saucier v. Katz*, 533 U.S. 194, 206 (2001); *Ramirez v. Dept of Corrections,* 222 F.3d 1238, 1244 (10th Cir. 2000); *Dill v. City of Edmond*, 155 F.3d 1193, 1204 (10th Cir.1998).

As discussed previously, the Court has already concluded that the Plaintiff has adequately alleged that each of the El Paso County Defendants violated his Eighth Amendment rights. The sole remaining question is whether those rights were "clearly established" at the time of the events at issue. That inquiry examines whether existing caselaw recognizes the existence of the constitutional right in the particularized factual circumstances of the case. *Brosseau v. Haugen*, 543 U.S. 193, 198-99 (2004). In the circumstances alleged by the Plaintiff, as an inmate's right to be free from deliberate indifference to his serious medical needs is so well-established that extensive citations to caselaw is unnecessary. Accordingly, the El Paso County Defendants are not entitled to dismissal on qualified immunity grounds at this time.

### E. Governmental Immunity

All Defendants contend that, to the extent that the Plaintiff asserts state-law tort claims, such claims are barred by his failure to file a Notice of Claim under the CGIA. The Court has reviewed the Second Amended Complaint carefully and finds that it does not reveal the existence of any clearly-articulated state-law tort claims, even when construed liberally due to the Plaintiff's *pro se* status. *See e.g. Docket* # 11, ¶ 44 (clearly articulating constitutional claims, but making no suggestion of state-law claims). Thus, the Defendants' motion to dismiss any such state-law claims is denied as moot.

### F. Plaintiff's request for case files

Finally, the Plaintiff moves to have copies of his prior case files sent to him. This request is a garden-variety request for copies of public records maintained by the Clerk of the Court. This Court will forward that request to the Clerk for handling in accordance with the policies of the Clerk's Office.

## CONCLUSION

For the foregoing reasons, the El Paso County Defendants' Motion to Dismiss or in the alternative for Summary Judgment **(# 23)** is **DENIED**. Defendant Correction's Motion to dismiss **(# 31)** is **DENIED**. The Plaintiff's Motion for an Order to Have Documents Sent to Him **(# 35)** is **GRANTED IN PART**, insofar as the Court will forward the Plaintiff's request for copies of filed documents to the Clerk of the Court for processing in accordance with Clerk's Office policies, and **DENIED IN PART**, in all other respects. The Clerk of the Court shall terminate Docket entry # 4 pursuant to Docket entry # 14, and shall terminate Docket entry # 5 pursuant to Docket entry # 6. The Plaintiff's Motion for Extension of Time to File a Reply **(# 34)** is **DENIED AS MOOT**. All future filings in this case shall bear the caption set forth in this Order.

Dated this 11th day of September, 2006

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge